IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 5, 2016

**COURTNEY WESLEY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 1106153     Chris Craft, Judge**

---

**No. W2015-01476-CCA-R3-PC  -  Filed February 29, 2016**

---

The petitioner, Courtney Wesley, appeals the denial of his petition for post-conviction relief from his 2013 Shelby County Criminal Court jury convictions of aggravated burglary and theft of property valued at $1,000 or more, alleging that he was denied the effective assistance of counsel.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Sharon Fortner, Memphis, Tennessee, for the appellant, Courtney Wesley.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Chris Lareau, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Shelby County Criminal Court jury convicted the petitioner of aggravated burglary and theft, and the trial court imposed a 10-year effective sentence, for his role in the theft of several pieces of NASCAR memorabilia from a residence belonging to the victim, Rodney Pickering.  On direct appeal, this court summarized the facts supporting the petitioner's convictions as follows:

> The State's evidence proved that the back door of the victim's house had been kicked in.  [The petitioner] and an associate were seen exiting the house, carrying property that belonged to the victim.  The victim asserted that he did not know [the petitioner] and had not given [the petitioner] permission to

enter his residence. Moreover, the victim clarified that although he often spent the night at another location that housed his business, the house that was burglarized was, indeed, his residence.

. . . . The State presented evidence that [the petitioner] was carrying property that belonged to the victim as he exited the victim's house. More of the victim's property had already been loaded into a waiting truck. [The petitioner] dropped the box he was carrying as he fled the scene. The victim testified with regard to the value attributed to the property.

*State v. Courtney Wesley*, No. W2013-00430-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App., Jackson, Jan. 17, 2014), *perm. app. denied* (Tenn. June 20, 2014).

Following the denial of his application for permission to appeal to the supreme court, the petitioner filed a timely petition for post-conviction relief, alleging, among other things, that he was denied the effective assistance of counsel at trial. Following the appointment of counsel, the petitioner filed an amended petition for post-conviction relief, adding claims that the evidence was insufficient to support his convictions and that the convictions were obtained "in direct contradiction" to his constitutional rights to a speedy trial and indictment by a grand jury and refining his claim of ineffective assistance of counsel.

At the April 24, 2015 evidentiary hearing, the petitioner testified that he was arrested on October 14, 2010, and accused of the aggravated burglary of the victim's residence. The petitioner claimed that the charges against him were dismissed with prejudice in the Shelby County Criminal Court prior to his being indicted by the Shelby County grand jury. Upon questioning by the post-conviction court, the petitioner agreed that "the warrant not the case, but the warrant was dismissed holding [him] in jail until [he] got indicted and brought to court."

The petitioner testified that at the time he was charged with the offenses in this case, he had two other cases pending in Shelby County. Those two cases were dismissed after the petitioner was charged in federal court for the same underlying offenses. The petitioner said that, from that point, when he met with trial counsel "it was accomplished by [his] federal lawyer," explaining that trial counsel was accompanied by the attorney representing the petitioner in federal court and that their discussions were confined to his "federal cases." He said that, as a result of these discussions, he believed that "all of these cases in [s]tate court would be dismissed if [he] pleaded guilty in federal court." He said that trial counsel advised him "to plead guilty in federal court and have

these other cases dismissed in state court." The petitioner said that he rejected each of the State's plea offers and elected to go to trial because he was innocent.

The petitioner testified that one of his co-defendants, Jeremy Self, initially implicated the petitioner in the offenses but later recanted. He explained, "[O]nce out on bond Jeremy Self decided to recant his statement which we did a[n] affidavit, a statement of facts, where he took all the guilt and knowledge that he falsely accused me in this crime." The petitioner said that he was present when Mr. Self prepared the affidavit but denied threatening Mr. Self to get him to recant. The petitioner claimed that trial counsel should have presented the affidavit at his trial.

The petitioner testified that his trial counsel failed to adequately prepare for his trial and that the two never discussed his rights, the evidence, or the range of potential punishment for the offenses because the petitioner "was told that [his] offer was a twelve year sentence" to dispose of all three pending cases. He said that "by studying law on [his] own," he came to realize that the plea offer was not favorable because he "knew that [he] could only get a ten which was the max."

The petitioner acknowledged receiving a copy of all the discovery materials but claimed that trial counsel never discussed them with him. He said that counsel did not visit him in jail, did not develop any theory of defense, and had no trial strategy. He said that counsel failed to capitalize on inconsistencies between the testimony provided by the State's witnesses at the preliminary hearing and their testimony at trial. The petitioner said that he asked trial counsel to subpoena alibi witnesses but that counsel failed to do so. He testified that he wanted his mother, his girlfriend, and one of his co-defendants to testify but that counsel did not present them as witnesses. He claimed that his mother "would have testified that the day this offense took place," she telephoned him to come to her house and separate two of his pit bulldogs that were fighting, that his girlfriend drove him to his mother's house, and that he was forced to chase one of the dogs into the vicinity of the crimes, which accounted for his sweating and racing heart when he was apprehended by the police. The petitioner said that he chose not to testify because counsel advised him that it would not be in his best interest to do so.

Trial counsel testified that he met with the petitioner "[a] number of times" and that several of those meetings included the petitioner's federal trial counsel. Counsel explained that it was his hope "that if there was a plea agreement reached in federal court that . . . there would be a recommendation that [the instant case] would be dismissed." He said that the prosecutor led him to believe that was the likely outcome. When those negotiations "fell apart," counsel tried to negotiate an agreement to dispose of the petitioner's charges but was unable to do so. Counsel testified that when he began preparing for trial, it was his opinion that the State would be unable to carry its burden of

-3-

establishing the petitioner's identity as one of the perpetrators. He said, "I didn't think anyone would be able to identify [the petitioner] based on what occurred at the preliminary hearing." Counsel could not recall whether he had discussed the discovery materials with the petitioner in preparation for trial.

With regard to the use of Mr. Self's recantation, counsel testified,

> What I remember about Jeremy Self is obviously he had been charged and he had entered a plea and he got probation and he was going to be the main witness for the State . . . . the only person that could identify [the petitioner]. And then the document where Jeremy Self purportedly exonerated [the petitioner].

Counsel said that he did not interview Mr. Self because he "did not know . . . where to begin to look for Mr. Self." He did not issue a subpoena for Mr. Self.

Counsel testified that the petitioner relayed to him the story of the petitioner's chasing his dog shortly before being apprehended by the police, but he could not recall whether the petitioner's mother corroborated the petitioner's story. He said that he did speak to the petitioner's mother on the telephone and that she did not tell him that she could provide the petitioner with an alibi. Counsel acknowledged that he did not conduct any witness interviews prior to trial and candidly admitted that he would not have called either of the petitioner's co-defendants as witnesses under any circumstances.

At the conclusion of the hearing, the post-conviction court took the petition under advisement. The court denied relief via written order, holding that the petitioner had failed to prove his allegations by clear and convincing evidence. The court found that because the petitioner failed to present the testimony of either Mr. Self or his alleged alibi witnesses at the evidentiary hearing, he could not establish that counsel performed deficiently by failing to present these witnesses at trial. The court also found that the petitioner failed to present any evidence to support his claims that counsel performed deficiently by failing to move the trial court to suppress the identification made by Officer Sean Kirby, by failing to produce the audio recording of the 9-1-1 call, by failing to object to the introduction of a photograph at trial, by failing to inform the petitioner that he could request a continuance of the sentencing hearing, or by failing to adequately investigate the case. The court concluded that the petitioner's testimony at the evidentiary hearing belied his claim that trial counsel had failed to properly advise him of the potential advantages and disadvantages of testifying at trial. With regard to the petitioner's claim that the convictions in this case violated his right to indictment by a

grand jury, the court determined that, contrary to the petitioner's belief, the charges against him were never dismissed with prejudice.

In this timely appeal, the petitioner contends that he was deprived of the effective assistance of counsel at trial. Specifically, he claims that counsel performed deficiently by failing to present alibi witnesses at trial and by failing to properly investigate the facts of the case prior to trial. The State asserts that the post-conviction court properly denied relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

A claim of ineffective assistance of counsel, specifically, is a mixed question of law and fact. *See Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015); *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is

not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick*, 454 S.W.3d at 458 (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The petitioner first argues that trial counsel performed deficiently by failing to present witnesses at trial to corroborate his alibi that he was out chasing his dog when the burglary occurred. We need not tarry long over the petitioner's claim because the petitioner failed to present any of these witnesses at the evidentiary hearing. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (holding that a post-conviction petitioner generally fails to establish his claim that counsel did not properly investigate or call a witness if he does not present the witness to the post-conviction court because a post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial).

Similarly, the petitioner's claim that counsel "failed to discover independent exculpatory evidence and information which could have assisted" the petitioner at trial must fail because the petitioner presented no "independent exculpatory evidence and information" that trial counsel should have discovered. *See id.* ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing.").

Accordingly, the judgment of the post-conviction court denying relief is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE